UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
JANE DOE,

                        Plaintiff,                  **MEMORANDUM AND ORDER**

     -against-                                        15-CV-3620 (RRM) (JMW)

HOLY BAGEL CAFÉ II, INC., d/b/a BAGEL CAFÉ d/b/a
BAGEL CAFÉ II; SANG CHON LEE; EN SEOUN LEE;
and LUDWIN R. SANCHEZ a/k/a ROBERTO SANCHEZ,

                        Defendants.
----------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Jane Doe – a teenager who left her job at defendant Holy Bagel Café II, Inc., d/b/a Bagel Café d/b/a Bagel Café II ("Holy Bagel") following an alleged sexual assault by a co-worker, defendant Ludwin R. Sanchez – brings this action against Holy Bagel; its owner, defendant Sang Chon Lee ("Mr. Lee"); his wife, En Seoun Lee ("Ms. Lee") (collectively, the "Holy Bagel Defendants"); and Sanchez. The complaint principally alleges sexual harassment/discrimination and state-law torts, but also includes a cause of action alleging failure to pay wages in violation of Article 6 of the New York State Labor Law. Plaintiff now moves for partial summary judgment not only with respect to the wage claim, but also with respect to other claims which were not alleged in the complaint. For the reasons set forth below, plaintiff's motion is denied in its entirety.

                                        **BACKGROUND**

      Unless otherwise indicated, the following facts are not in dispute. At all times relevant here, plaintiff was a teenaged high school student. (Plaintiff's Rule 56.1 Statement of Material Facts ("Pl. 56.1 Statement") (Doc. No. 56-3) at ¶ 3; Defendants' Rule 56.1 Response ("Def. 56.1

Statement") (Doc. No. 57-3) at ¶ 3.) In May 2013, she was hired as a cashier/front counter worker by Holy Bagel, a bagel shop in Bay Shore, New York. (Pl. 56.1 Statement at ¶¶ 1, 3; Def. 56.1 Statement at ¶¶ 1, 3.) Her immediate supervisors were Mr. and Ms. Lee. (Pl. 56.1 Statement at ¶ 2; Def. 56.1 Statement at ¶ 2.) Mr. Lee, the owner of the shop, also supervised the work of at least one other employee: defendant Sanchez. (Complaint (Doc. No. 1) at ¶ 26; Holy Bagel Defendants' Answer (Doc. No. 9) at ¶ 26.)

As of September 2013, plaintiff was working on Saturdays and Sundays, 5:30 a.m. to 3:00 p.m., (Complaint at ¶ 31; Holy Bagel Defendants' Answer at ¶ 31), and as of February 2014, she was paid $8.50 per hour in cash. (Pl. 56.1 Statement at ¶¶ 4, 10; Def. 56.1 Statement at ¶¶ 4, 10.) Between February 16 and 23, 2014, plaintiff worked 18 hours and 45 minutes, earning $156.75. (Pl. 56.1 Statement at ¶ 8; Def. 56.1 Statement at ¶ 8.)

According to plaintiff, Sanchez sexually abused her during her employment. Plaintiff alleges that beginning in or about October 2013, Sanchez started brushing up against her body when he passed her, particularly when she was washing dishes. (Complaint at ¶ 34.) Thereafter, he allegedly "escalated" the abuse by engaging in such conduct as slapping her buttocks, touching her breasts and genital area, and making sexually inappropriate comments. (*Id.* at ¶ 35.) Plaintiff claims that she repeatedly told Sanchez to stop and reported Sanchez's actions to both Mr. and Ms. Lee, but the abuse persisted. (*Id.* at ¶¶ 36–46.)

Plaintiff alleges that the abuse culminated in a February 23, 2014, incident in which Sanchez locked her in a walk-in freezer, then forced her up against a table and groped her buttocks, breasts, and vaginal area. (*Id.* at ¶ 49.) She managed to escape the freezer but he pursued her and continued to grope her breasts as she stood behind the counter in the front of the store. (*Id.* at ¶ 50.) She managed to contact her family, who immediately called the police. (*Id.*

at ¶¶ 51–52.)  According to plaintiff, Sanchez admitted to police that he had groped her.  (*Id.* at ¶ 53.)  Mr. Lee was informed by plaintiff's father and others that plaintiff could not continue to work unless Sanchez was terminated, but Mr. Lee allegedly refused to terminate him.  (*Id.* at ¶¶ 55, 57.)  Plaintiff claims that, as a result of this refusal, she was constructively terminated on February 23, 2014.  (*Id.* at ¶ 58.)

This Action

Following this incident, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  On April 29, 2015 – more than 180 days after the filing of the Charge – the EEOC issued a right-to-sue notice at plaintiff's request.  (Complaint (Doc. No. 1) Ex. 1, at 16–19.)  On June 22, 2015, plaintiff commenced this action.

Plaintiff complaint, which has never been amended, raises seven causes of action.  These can be grouped into three categories.  The first three causes of action allege sexual harassment and discrimination in violation of federal and state law.  The next three causes of action allege state torts:  assault, battery, and wrongful detention/false imprisonment.  These six causes of action are not at issue in this motion.

The seventh cause of action alleges that Holy Bagel violated Article 6 of New York Labor Law ("NYLL") by failing to pay plaintiff the $156.75 it owed her at the time of her constructive termination.  The first paragraph of this cause of action specifically references that portion of Article 6 which required Holy Bagel to pay plaintiff "no later than the regular pay day for the pay period during which the termination occurred." (Complaint at ¶ 105.)  The cause of action also alludes to other violations of Article 6, stating: "Plaintiff also claims that defendant violated all other applicable sections of New York Labor Law Article 6." (*Id.* at ¶ 108.)  However, the pleading does not specify the "applicable sections," much less allege facts to

establish a violation of any section of Article 6 other than the section which dictates that wages be paid not later than seven calendar days after the end of the week in which they were earned.

On September 29, 2015, Magistrate Judge Anne Y. Shields held the initial conference in this case. According to Judge Shield's Civil Conference Minute Order (Doc. No. 12), counsel agreed to discuss and attempt to compromise the wage claim set forth in the seventh cause of action. Those discussions proved fruitless. At a conference on November 12, 2015, plaintiff's counsel implied that plaintiff was demanding not only the $156.75 in back pay but also "double damages" as provided by "statute." In addition, counsel indicated that plaintiff was seeking to recover "$50 per week" for Holy Bagel's failure "to provide the required disclosure." (Transcript of Nov. 12, 2015, Conference (Doc. No. 16) at 6.) The magistrate judge subsequently questioned plaintiff's counsel about this reference to "required disclosure," clarifying that plaintiff was "saying she never got a statement of wages ever" and that the $50 per week was the "statutory penalty" for the nondisclosure. (*Id.*)

Holy Bagel's counsel tacitly conceded that Holy Bagel owed plaintiff the $156.75 and had not yet paid her the money, but implied that his client was not liable for additional amounts because plaintiff herself was responsible for the nonpayment. He stated: "[M]y client offered to pay and call[ed] her to get back to take the check, and she didn't answer the phone. She didn't get back, so we still hold the check." (*Id.*) He implied that his client was unwilling to settle the wage claim in light of "[s]ome disagreement." (*Id.* at 7.)

In light of this discussion, Judge Shields acknowledged that the wage claim would not settle. However, for reasons which are unclear, she alluded to "an FSLA [*sic*] claim" in doing so, even though a Fair Labor Standards Act violation had not been alleged in plaintiff's pleading. Judge Shields stated:

4

> Okay, listen. If you want to argue whether or not the plaintiff has an FSLA [*sic*] claim in here, you can do that. That's fine, okay? … So if you want to press the claim for the double damages, the statutory fees and all of that, go on with it. So this is not only a harassment claim, it's an FSLA [*sic*] claim. Given that, when we come down to settlement, it's going to be with court order and court approval and you'll have to go down that road as well. Now you're not settling the FSLA [*sic*], the one week of wages, so that's fine. That's just part of the case.

(*Id.*)

In May 2016, Mr. Lee petitioned for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Eastern District of New York. (*See In re Sang Chon Lee*, No. 8-16-72384, Doc. No. 1.) On August 23, 2016, Mr. Lee was granted a discharge under 11 U.S.C. § 727. (*Id.*, Doc. No. 9.) On March 30, 2017, plaintiff dismissed Mr. Lee from the action. (Stipulation of Dismissal with Prejudice (Doc. No. 40).) The action continued with respect to Holy Bagel and Ms. Lee (collectively, the "Remaining Holy Bagel Defendants").

Discovery dragged on until April 2019. Following the final civil conference on April 1, 2019, Judge Shield wrote a Minute Order which stated, among other things: "Discovery in this matter is now complete with the exception of Plaintiff completing the undersigned's FLSA interrogatories (found in the appendix of the undersigned's individual rules) and producing them to Defendant by April 15, 2019." (Civil Conference Minute Order dated Apr. 1, 2019 (Doc. No. 52).) Those interrogatories were timely completed. (*See* Individual Rules Appendix D Affidavit (Doc. No. 56-9).)

<u>The Instant Motion</u>

Plaintiff now moves for partial summary judgment, not only with respect to the state-law claim for failure to pay plaintiff her last week of wages but also with respect to several other claims which were not alleged in her complaint. First, plaintiff seeks summary judgment with respect to federal and state minimum wage claims, asserting that Holy Bagel's admitted failure

5

to pay the $156.75 also constitutes a violation of the Fair Labor Standards Act ("FLSA") and NYLL § 652(1). (Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Memo") (Doc. No. 56-4) at 3–4.) Plaintiff does not just seek the back wages but claims that, under the FLSA and NYLL, she is also entitled to liquidated damages in an amount equal to those wages. (*Id.* at 6–7.) Second, plaintiff argues that she is "entitled to summary judgment on her notification of pay rate claim pursuant to NYLL §195(1)(a)" and the New York Wage Theft Protection Act ("WTPA"). (Plaintiff's Memo at 4–5.) Third, plaintiff argues that she is "entitled to summary judgment on her wage statement claim pursuant to NYLL §195(3) and WTPA." (*Id.* at 5–6.) Plaintiff also argues that she is entitled to attorney's fees pursuant to NYLL §198(1-a) and (1-d), and to prejudgment interest at rate of 9% per annum. (*Id.* at 6–7.)

      The Remaining Holy Bagel Defendants oppose plaintiff's motion. First, these defendants note that plaintiff's complaint did not allege a violation of minimum wage laws or the WTPA, and included no claims relating to wage statements or pay advices. The defendants argue that plaintiff cannot move for summary judgment on these claims because they were not raised in plaintiff's pleading.

      With respect to the claim squarely raised in the seventh cause of action, defendants argue that genuine issues of material fact exist as to whether Holy Bagel failed to pay plaintiff her final wages. Defendants concede that plaintiff has not yet received the $156.75, but contend that this is due to plaintiff's failure to pick up the money or to tell defendants where to send the check. According to defendants, this cause of action "is entirely self-created" by plaintiff, who demands $3,000 to settle the claim and refuses to accept the $156.75.

In support of the latter argument, defendants rely primarily on an affidavit signed by Mr. Lee on October 8, 2020 (the "Lee Affidavit"). In that affidavit, Mr. Lee states that when plaintiff did not return to collect her final week's pay on the regular payday, he called her to ask if she was going to pick up the money. (Lee Aff. (Doc. No. 57-2) at ¶ 5.) She did not answer. (*Id.*) Over the next two weeks, he called several more times and left voicemails asking plaintiff to either pick up the money or tell him where to send it. (*Id.* at ¶ 6.) She did not return his calls. (*Id.*) Mr. Lee claims that he has never denied that she is entitled to the wages, is holding the money for her, and has told plaintiff's counsel that he is prepared to provide it on request. (*Id.* at ¶ 7.) However, he has been informed that she refuses to accept the $156.75, claiming that she is owed over $3,000. (*Id.*)

The Lee Affidavit anticipates that plaintiff will seek to challenge it on the ground that Mr. Lee is not proficient in English and, therefore, unable to attest to the affidavit's contents. Mr. Lee states that he understands English well enough to express himself and provide the information contained in the affidavit. (*Id.* at 9.) Mr. Lee does not represent that he himself wrote the affidavit but states that he "understands everything in this affidavit," (*id.*), and affirms, under penalty of perjury, that the statements in the affidavit are "true of [his] own knowledge," (*id.* at 1).

In her reply, plaintiff does indeed challenge the Lee Affidavit. Citing a portion of Lee's deposition in which Mr. Lee claimed he was unable to "fully understand" certain documents written in English, plaintiff argues that Mr. Lee "was clearly unable to comprehend written English at his depositions in this matter." (Plaintiff's Reply Memorandum of Law ("Reply Memo") (Doc. No. 58) at 5.) Plaintiff reasons that the Lee Affidavit must have originally been

7

written by Mr. Lee in his native Korean and argues that it cannot be admissible without an affidavit or certificate of translation. (*Id.* at 9.)

Plaintiff further argues that, even if the Lee Affidavit is admitted, it does not establish a genuine issue of material fact regarding plaintiff's refusal to provide back pay. In support of this argument, plaintiff relies both on the Holy Bagel Defendants' answer, which denied the allegations of the seventh cause of action, and an email from the Holy Bagel Defendants' counsel to plaintiff's counsel which states, "my client's firm position is that no back wages are due to the Plaintiff …." (*Id.* at 9 (quoting 10/29/2015 email from William Brown, Esq., to Gary Certain (Doc. No. 58-2).) Plaintiff represents that these denials are attributable to the Holy Bagel Defendants and establish that Mr. Lee did not, in fact, tender the back pay. In addition, plaintiff faults defendants for not simply mailing the money to plaintiff or making any effort to discuss payment with plaintiff counsel when he personally returned the shop's key to defendants. (Reply Memo at 10.)

The Reply Memo also rebuts defendants' argument that no claims other than the state-law failure to pay cause of action were alleged in the complaint. First, plaintiff argues that the sentence, "Plaintiff also claims that defendant violated all other applicable sections of New York Labor Law Article 6," is alone sufficient to place defendants on notice of the minimum wage, WTPA, and notification-of-pay-rate claims. (Reply Memo at 10, 12.) Second, plaintiff argues that Magistrate Judge Shields "allowed Doe's FLSA claim" as evidenced by her comments at the November 12, 2015, conference and her direction that plaintiff complete "FLSA interrogatories" in accordance with her individual rules. (*Id.* at 10–11.) Plaintiff implies that defendants' failure to contradict the magistrate judge somehow estops them from arguing that the FLSA claim was not alleged in the complaint. (*Id.* at 11.) Plaintiff also contends that the seventh cause of action

8

implies minimum wage claims since a failure to pay any wages whatsoever necessarily violates the federal and state minimum wage statutes. Finally, plaintiff requests leave to amend the complaint "[i]n the event that this court deems an amended complaint necessary." (*Id.*)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it may impact the "outcome of the suit under the governing law." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed," and the Court must draw all "justifiable" or reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255 (citation omitted); *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) ("[T]he court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions ... in the light most favorable to the party opposing the motion." (citations omitted)).

Once the moving party has demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted) (citation omitted); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)

9

(collecting cases and stating that the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation"). In other words, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

## DISCUSSION

<u>The Failure to Pay Wages Claim</u>

Although the seventh cause of action does not specify which sections of NYLL Article 6 were allegedly violated, the cause of action implies that plaintiff violated NYLL § 191 by failing to pay plaintiff her final week of wages. This statute, entitled "Frequency of payments," sets forth requirements governing an employer's wage payments to four subcategories of employees: a "Manual worker," defined as a "mechanic, workingman or laborer," NYLL § 191(1)(a); a "Railroad worker," *id.* § 191(1)(b); "Commission salespersons," *id.* § 191(1)(c); and "Clerical and other worker[s]," *id.* § 191(1)(d). This last category is a "catch-all provision," *Lauria v. Herrnan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009), encompassing any employee not included in the earlier subcategories, except those "employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of nine hundred dollars a week." NYLL § 190(7).

NYLL § 191(1)(d) provides that "clerical and other workers shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." In addition, NYLL § 191(3) provides:

> If employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section. If requested by the employee, such wages shall be paid by mail.

10

"If an employer wrongfully withholds earned wages under NYLL § 191, an employee may sue to recover the wages, prejudgment interest, as well as liquidated damages of twenty-five percent of the withheld wages." *Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-6304 (MKB), 2014 WL 1011070, at *14 (E.D.N.Y. Mar. 14, 2014) (citing *Michalek v. Amplify Sports & Entm't LLC*, No. 11-CV-508 (PGG), 2012 WL 2357414, at *4 (S.D.N.Y. June 20, 2012); *Dreyfuss v. eTelecare Glob. Sols.-US, Inc.*, No. 08-CV-1115 (RJS), 2010 WL 4058143, at *5 (S.D.N.Y. Sept. 30, 2010).

In this case, plaintiff has not established that the Holy Bagel Defendants have wrongfully withheld plaintiff's wages. It is undisputed that plaintiff was paid in cash. In his affidavit, Mr. Lee indicates that he tendered the cash on plaintiff's regular pay day and repeatedly called plaintiff, asking her to pick up the money or provide him with a mailing address. While it is undisputed that plaintiff never received the $156.75, Mr. Lee claims that this is solely attributable to the fact that plaintiff never responded to his calls.

Plaintiff has offered no evidence to controvert Mr. Lee's statements. Rather, plaintiff asks the Court to disregard the Lee Affidavit on the theory that Mr. Lee himself drafted the affidavit and that defendants' counsel then had it translated into English. This theory is based on speculation; there is no evidence as to who drafted the affidavit. Mr. Lee does not represent that he himself wrote the affidavit. To the contrary, he states only that he understands English well enough to express himself and provide the information contained in the affidavit. (*See* Lee Aff. at 9.) He also states that he "understands everything in this affidavit," (*id.*), and affirms, under penalty of perjury, that the statements in the affidavit are "true of [his] own knowledge," (*id.* at 1). Although Plaintiff offers evidence that Mr. Lee had difficulty speaking English at his

11

deposition and was unable to read complicated documents, this evidence does not establish that Mr. Lee's representations are false.

Plaintiff further questions Mr. Lee's veracity by noting that he never tendered the cash to plaintiff's attorney or mailed the money to plaintiff. Even if true, this does not establish a violation of Article 6. Section 191(3) specifically provides that an employer is not required to mail a terminated employee the final paycheck unless the employee expressly requests it. And the Lee Affidavit implies that the lawyer would not have accept the $156.75 in settlement of the wage claim, as he was demanding an amount in excess of $3,000.

In light of the Lee Affidavit, the Court concludes that there exist genuine issues of material fact that prevent the Court from granting summary judgment with respect to the seventh cause of action. These same issues of fact prevent the Court from ruling on plaintiff's request for liquidated damages, attorney's fees, or prejudgment interest.

The Remaining Claims

Before addressing the other arguments raised by plaintiff in her motion for partial summary judgment, the Court must determine whether any claims other than the Failure to Pay Wages Claim, discussed above, are adequately alleged in the complaint's seventh cause of action. The liberal notice pleading standards set forth in Rule 8 of Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but the statement of the claim must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To be actionable, a claim must be contained in a pleading. A "[p]laintiff cannot raise a new claim through a motion." *Feng v. Soy Sauce LLC*, No. 15-CV-3058 (ENV)(LB), 2016 WL 1070813, at *3 (E.D.N.Y. Mar. 14, 2016). Since "a brief is a not a pleading under Fed. R. Civ. Proc. 7(a)[,] … a plaintiff may not amend his pleading through his brief." *Kelly v. Bus. Info. Grp., Inc.*, No. 15-CV-6668, 2017 WL 2720173, at *2 (E.D. Pa. June 22, 2017). It is well established that "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment," *Wilson v. City of New York*, 480 F. App'x 592, 594 (2d Cir. 2012) (summary order) and that "[d]istrict courts are justified in brushing aside … argument[s] not alleged in [the] complaint but raised for the first time in opposition to summary judgment." *Shabazz v. City of New York*, No. 15-CV-1324 (RPK) (RML), 2021 WL 633748, at *3 (E.D.N.Y. Feb. 17, 2021) (internal quotation marks and citation omitted; alterations in *Shabazz*.) It is equally inappropriate for a plaintiff to raise new claims for the first time in her motion for summary judgment.

The only argument raised in the seventh cause of action in plaintiff's complaint is a claim that plaintiff failed to pay plaintiff her last week's wages in violation of some unspecified provision of Article 6 of New York Labor Law – presumably, NYLL § 191. The seventh cause of action does not allege a violation of the FLSA or New York's Minimum Wage Act, which is codified in Article 19 of New York Labor Law. The fact that Judge Shields mistakenly believed that the complaint alleged an FLSA claim is of no moment. The magistrate judge did not deem the complaint amended to add this claim and plaintiff offers no authority to support the proposition that defendants' failure to correct the magistrate judge's mistake somehow amends the pleading or estops the defendants' from arguing that the complaint did not allege an FLSA

13

claim. Accordingly, plaintiff's motion for summary judgment with respect to federal or state minimum wage statutes is denied.

To be sure, the seventh cause of action alleges that "Plaintiff also claims that the defendant violated all other applicable sections of New York Labor Law Article 6." (Complaint at ¶ 108.) However, the seventh cause of action does not identify which of Article 6's many sections are "applicable" or were allegedly violated. Moreover, the complaint does not identify "the defendant" accused of violating Article 6 or contain factual allegations explaining how that defendant violated Article 6 in ways other than failing to pay plaintiff the $156.75 she was owed for her final week of work. The single sentence in paragraph 108 of the complaint is simply inadequate to put defendants on notice that plaintiff was alleging a violation of the pay-rate notification provisions of NYLL § 195(1)(a), the wage statement requirements of NYLL § 195(3), or any other provisions of the WTPA. *See Erickson*, 551 U.S. at 93; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (complaint must provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests.") The Court cannot grant summary judgment with respect to any of these claims.

The Request to Amend the Complaint

In her Reply Memo, plaintiff requests leave to amend the complaint "[i]n the event that this court deems an amended complaint necessary." (*Id.*) To the extent that this request could be construed as a motion to amend pursuant to Federal Rule of Civil Procedure 15(a), that motion is denied. "Reply papers are not the proper place for new arguments or requests for relief." *Northern Assurance Co. v. Formosa Plastics Corp., U.S.A.*, No. 10-CV-3001 (BSJ), 2011 WL 2421312, at *2 (S.D.N.Y. June 13, 2011) (quoting *Irish Lesbian and Gay Org. v. Giuliani*, 918 F. Supp. 728, 731 (S.D.N.Y. 1996). To the extent plaintiff wishes to seek permission to amend her

14

pleading, she may request a pre-motion conference in accordance with paragraph III.A.2 of the Court's Individual Rules (available at www.nyed.uscourts.gov/content/judge-roslynn-r-mauskopf).

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is denied in its entirety. This action is recommitted to Magistrate Judge Wicks for all remaining pre-trial matters, including settlement discussions if appropriate.

SO ORDERED.

Dated: Brooklyn, New York
      September 29, 2021

*Roslynn R. Mauskopf*
ROSLYNN R. MAUSKOPF
United States District Judge